UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | Criminal No. 4:20-cr-00455 |
| | § | |
| **ZHENGDONG CHENG** | § | |

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO OPPOSED MOTION TO SUPPRESS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ANDREW S. HANEN:

ZHENGDONG CHENG, Defendant, ("Cheng") replies to the Government's response (ECF No. 46) to his *Opposed Motion to Suppress* (ECF No. 41) as follows:

The Government's response focuses on arguments Cheng did not make and ignores those Cheng did make[1] to obfuscate the agents' unconstitutional conduct on August 23, 2020. Cheng encourages the Court to review not only the transcript, but the video recordings of the interrogation. The body language, changes in voice volume, tone of voice, hand movements, and timing more clearly demonstrate the violation of Cheng's rights than can be reflected on a written page.

**A.  The Government Ignores Defendant's Actual Words to Argue that Cheng Re-initiated Interrogation after His Unambiguous Invocation of Counsel:**

The Government concedes that Cheng was under arrest in its response – a fact agents repeatedly misrepresented that to Cheng in order to lull him into believing he would be free to leave after he answered their questions.[2] Then, the Government sets up a straw man to knock down by

---

[1] The Government failed to respond at all to Cheng's argument that the evidence must be suppressed because his rights to Due Process were violated by the agents. ECF No. 41 at p. 15, § III.C. The term "Due Process" never appears in the response. *See* ECF No. 46.

[2] Had Cheng not asked if he could go to his hotel, it is almost certain the agents would not have expressly revealed to him that he was detained prior to the conclusion of the interview.

1

largely ignoring Cheng's initial, unambiguous, and unequivocal request to counsel and instead focus its argument on Cheng's later references to counsel, which are immaterial to his claim. The interview should never have proceeded past Cheng's first request for counsel. That undisputed initial exchange was as follows:

> **Cheng:** **But I, I, if you have you can get a lawyer, I want to have a lawyer present.**
>
> **FBI SA:** You are absolutely. But we just can't talk to you if you do that right now. We can't answer your question right now, sir.
>
> - ECF No. 41, Ex. A (MVI_0020.MP4 at time stamp 0:01:25 – 0:01:44).

Cheng's request was unambiguous and unequivocal. Cheng did not ask "whether he should get an attorney; how he could get one; and how long it would take to have an attorney appointed," requests courts have found deficient. *Soffar v. Cockrell,* 300 F.3d 588, 595 (5th Cir. 2002). Cheng asked for a lawyer. Cheng was not still making up his mind; his mind was made up. Cheng wanted a lawyer and asked for one. Any reasonable officer would have construed Cheng's statement as an expression of a desire for the assistance of an attorney; these agents certainly did. *See Davis v. United States,* 512 U.S. 452, 459 (1994).

SA Collier evidently recognized this was a request for counsel by Cheng, as this is the only rational explanation for why Collier immediately responded the way he did. Had Cheng been ambiguous or equivocal, Collier's response would have been different. Only because SA Collier recognized Cheng's statement as an unambiguous unequivocal request for counsel did Collier feel compelled to communicate to Cheng they could not answer his questions if he got a lawyer. Instead of respecting Cheng's request for a lawyer and ending the interview then as the law requires, SA Collier, not Cheng, re-initiated the conversation to attempt to talk to Cheng out of getting a lawyer.

Any oral or written statements by Cheng and any further waivers or consents after this initial request for counsel should be suppressed.

**B.     The Agents' Deceptions Rendered Cheng's Consent to Be Questioned Involuntary**

Separate from the issue of Cheng's request for counsel, Cheng's statements (and subsequent consent and searches) are also suppressible because the agents' conduct rendered any waiver or consent by Dr. Cheng involuntary. The Government's response to Cheng's involuntariness claim virtually ignores evidence relating to the first component of the Court's analysis, i.e. to determine whether Cheng's waiver "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Cardenas*, 410 F.3d 287, 293 at fn. 23 (5th Cir. 2005) (internal citation omitted). The Government wholly fails to address the coercive and deceptive conduct by the agents' including statements that: Cheng was not under arrest; Cheng would be taken to jail if he persisted in requesting a lawyer; suggestions that Cheng would be free to go to his hotel after he interviewed without a lawyer; or that Cheng waiving his rights was a procedure or formality; and the agents' concealment of the existence of pending charges against Cheng. As a result of this Cheng's entire interview was involuntary.[3]

**C.     Suppression of Statements Will Suppress Searches of Devices Because Cheng Gave Agents Passwords During the Interview**

The Government then contends that even if Cheng is correct, any evidence from the devices is still admissible because it was obtained as part of a search pursuant to arrest and they later obtained search warrants. This is incorrect according to the unique indisputable facts of this case. SA Collier requested, and Cheng provided, passwords to the devices which were used by agents to

---

[3] The Government makes too much of Cheng's education. Cheng's education, training, and experience are in science, not law, and there is nothing to suggest that he has any legal training or experience or criminal history. The length of Cheng's international travel is also not in dispute. The Government's argument that Cheng was not

3

copy/image and search the device contents. Without the passwords, which are part of Cheng's statements to be suppressed, no copying/imaging and searches (contemporaneous or subsequent) would have been possible due to device encryption or other security features. Any use of the passwords by the Government to access the devices whether to image/copy, or search (contemporaneous or subsequent of images obtained as a result of password use) and the fruits thereof must also be suppressed regardless of when they occurred.[4] But for the passwords, the devices were useless to the Government.

Long after agents repeatedly told Cheng he was not under arrest, SA Collier asked Cheng to retrieve the devices from his bag. "Can you grab the devices out of your luggage?" ECF No. 46, Ex. A, Part 2 at p. 34. Afterwards, Agent Collier asked Cheng for the passwords to his devices in order to search then, at the airport, not days or weeks later. *Id.* at pp. 35-44. Collier told Cheng: "It shouldn't take long. I will go take 'em to someone who can, quickly search'em." *Id.* at 19. "[S]o are you willing to, let's consent, search your devices? We won't have them very long." *Id.* t p. 23. "Can we search your devices?" *Id.* at p. 25. "So while you are finishing telling us what you have to tell us, the devices will go and get searched, then while they're getting searched.." *Id.* at p. 27. However, for the devices to be imaged/copied or searched, the agents needed Cheng's passwords.

Recognizing this necessity, SA Collier said, "I think you're gonna have to give us the passwords, which you will have to …I can see it taking no more than like 15 minutes." ECF No. 46,

---

fatigued is undermined by both Cheng's body language on video and his expressed desire to go to his hotel.

[4] This is distinguishable from the *Fulton* case cited by the Government which addressed the search of a cell phone long after it was seized from a suspect at the time of his arrest. *United States v. Fulton,* 192 F.Supp.3d 728, 731(S.D. Tex. 2016); aff'd 928 F.3d 429,434 (5th Cir. 2019)( "Three weeks later, that agent obtained a federal warrant to search the phone. Still, it took a year before the data on the phone was accessed."). It did not concern either the suppression of passwords given to access the phone, voluntariness of consent, or a search between the time of the seizure and the search warrant issuance. As an aside, the Government does not claim that it did not search Cheng's devices between the time he produced them and when any search warrants were subsequently obtained.

Ex. A, Part 2 at p. 35. Later, going through the devices one at a time, SA Collier said "[w]e're gonna write iPad. And I need your password for that." *Id.* at p. 36. And also, "[a]lright so which, that's a phone…what's the password to get into that." *Id.* at p. 38. "[O]h that's a Samsung Was there a password for it? The same as that one." *Id.* "Just want to make sure I can spell Huawei correct. Okay that's the password." *Id.* at 40.  Finally, Cheng changed the password to his work laptop to allow agents to search it and they took it after he unlocked it. *Id* at pp. 41-44.  The device passwords were even written by SA Collier on the Consent to Search.  ECF No. 41 at Ex. E.

Regardless of when the "search" of the devices occurred, if Cheng's statements are suppressed, the passwords, like the written consent, are fruit of the poisonous tree.  Absent those passwords, the Government would not have been able to image/copy the devices at that time or search the devices at any time.  Any copies/images made with the passwords, searches of Cheng's devices using the passwords Cheng told agents, or searches of the copies/images of the devices must be suppressed.

**D.      The Agents' Deceptions Rendered Cheng's Consent to Search Devices Involuntary**

Even if the Court finds that Cheng did not request counsel, and that his initial consent/waiver was knowing and voluntary, and that no due process violation occurred, the Court must separately consider the written consent to Search Cheng's devices.  Similar to the shortcomings of the Government's response to Cheng's argument that the first consent was not knowing and voluntary, the Government ignores the materiality of the agents' repeated and written promises to Cheng that his devices would be returned to him in fifteen minutes to induce his consent.

The video reveals a more than thirty-one minute press by agents to overcome Cheng's reluctance to consent to searches of his devices by promising him they will have them back almost

5

immediately. *See* ECF No. 41 at Ex. A (MVI_0022.MP4 at time stamps 0:19:53 – 0:33:26 (end of video file) thru MVI_0023.MP4 at time stamps 0:00:00 – 0:17:53 (Cheng's signature)); *See also* ECF No. 46 at Ex. A, Part 2, pp. 18-27, 34-45.  They knew Cheng was tired and eager to get to his hotel after his long international flight.  Thus, the agents doubled down on their earlier deception that Cheng was not under arrest and suggestions that he would be able to leave after the interview by repeatedly promising Cheng the search of his devices would only take fifteen minutes.  As Cheng finally signed the consent and afterwards, the agents knew Cheng believed, because they led him to believe, that after the brief search, he would get his devices back and leave with them that evening.  The agents recognized this promise was material – which is why they repeatedly made it aloud and even agreed to his request they write it on the consent form.  It was not true.  The agents knew they were going to handcuff Cheng and take him to jail in Houston in a few minutes and that they would be keeping his devices for months longer than the fifteen minutes they promised. This material misrepresentation induced Cheng's consent and rendered it involuntary.

When first asked to consent to search of his devices, Cheng sighed and said, "[h]ow long does it take?" CF No. 46, Ex. A, Part 2 at p.18.  SA Collier replied, "[i]t, it shouldn't take long I will go take 'em to someone who can quickly search'em…and then um, like here's the deal – at any time you can say, no, I want my devices back and we'll bring 'em back." *Id.* at 19.  Agents had to repeatedly ask Cheng for consent over a half-hour before he ultimately signed.  In his later efforts Collier said, "[b]ut so, so are you willing to, let's consent, search your devices?  We won't have them very long." *Id.* at pg. 23.  Collier continued to imply the devices quick return and Cheng's release, "So while you are finishing telling us what you have to tell us, the devices will go and get searched." *Id.* at p.. 27.  Later, Cheng asked, "[w]hen can I get the device back?" *Id.* at 34-35. SA

Collier responded "Uh, you'll get it back probably [full response cannot be determined]." *Id; see also* ECF No. 41, Ex. A (MVI_0023.MP4 at time stamp 0:06:23 0:6:32). Immediately before executing the consent, Cheng brought it up repeatedly. The agents responded that they would return the devices in fifteen minutes. Cheng insisted it be written on the consent. SA Collier agreed. That exchange was as follows:

| | |
|---|---|
| **Cheng:** | Laptop. And you going to give it to me after we talk. |
| **FBI SA:** | Yeah. It shouldn't take that long. Um, |
| **Cheng:** | Because I need this [Unintelligible] |
| **FBI SA:** | I know, I know. It's your life. [Unintelligible]. So if you consent you will sign here, I will witness. |
| **Cheng**: | Can, can you write I can get it back today? |
| **FBI SA**: | Well I can say, I can say we will have it back in 15 minutes. |
| **Cheng**: | Okay. |
| **FBI SA**: | Or less. |
| **Cheng**: | Yeah. |
| **FBI SA**: | 15 |
| **Cheng**: | [Unintelligible] quick then |
| **FBI SA**: | minutes or less. |
| **NASA OIG**: | Can't even get a pizza 15 minutes or less. |
| **FBI SA**: | You can time me. Alright, go ahead and if you, if you consent uh, sign your name there. |

- Ex. ECF No. 41, Ex. A (MVI_0023.MP4 at time stamps 0:17:08 – 0:17:53); *See also* ECF No. 46. at Ex. A, Part 2 pp. 42-43

Later, SA Collier even acknowledged the materiality, stating "I'm on the 15 minute time

frame…I'm on the clock. Okay, be right back." ECF No. 46, Ex. A, Part 2 at p. 45.  As the Court is aware, the devices have never been returned to Defendant.  This promise was yet another impermissible deception by agents to induce Cheng to waiving his constitutional rights that renders any consent or waiver involuntary.  The foregoing also underscores the violation of Cheng's rights to Due Process which the Government fails to address.  Regardless, any search of the devices should be suppressed as fruit of the poisonous tree.

## II. CONCLUSION

Zhengdong Cheng requests the Court grant his motion and suppress the custodial interrogation of Cheng, including his oral and written statements (including passwords), consent to search, and any evidence obtained as a result thereof.  To the extent the Court determines there are any factual disputes raised by the Government's response or the evidence, Defendant requests an evidentiary hearing on this motion.

Respectfully Submitted,

**HILDER & ASSOCIATES, P.C.**

/S/ *Q. Tate Williams*
Quentin Tate Williams
Texas Bar No. 24013760
Philip H. Hilder
Texas Bar No. 09620050
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
tate@hilderlaw.com
philip@hilderlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument has been served upon the Assistant United States Attorney for the government herein, via ECF contemporaneous with filing and/or hand delivery.

                                              /S/ *Q. Tate Williams*
                                              Quentin Tate Williams