United States District Court
Southern District of Texas
**ENTERED**
August 10, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, | § § § | |
| v. | § § | CRIMINAL ACTION NO. 4:20-CR-455 |
| ZHENDONG CHENG, *Defendant*. | § § § | |

## CONDITIONAL ORDER

Before the Court are Defendant Zhendong Cheng's ("Cheng") Motion and Supplemental Motions to Revoke Order of Detention (Doc. Nos. 30, 31, 34, 35, and 50) and the Government's response in opposition (Doc. No. 32). This case presents a very close call as to whether the Defendant should be allowed any form of pretrial release. After considering the pleadings, briefs, prevailing law, and evidence, as well as the argument of counsel, the Court finds the following:

Cheng is the sole defendant in this case. He is charged with one count of conspiring to defraud the United States, seven counts of wire fraud, and nine counts of making false statements. Generally speaking, these counts stem from allegations that Cheng, while working for Texas A&M University, was also associated with and working for various entities or programs owned or operated either directly or indirectly by Chinese companies and/or the People's Republic of China. According to the indictment, Cheng falsely represented, concealed, or made false and misleading statements about his Chinese ties in government-funded grant applications. The Court need not delve into the actual allegations except where they overlap with the factors concerning pretrial release. Cheng has pleaded not guilty and a jury will be needed to decide whether Cheng is indeed guilty.

The issue before the Court is whether Cheng must remain in jail until trial or whether he qualifies for pretrial release. The Magistrate Judge in this case found that the government had established by a preponderance of the evidence that there were no set of circumstances that would assure Cheng's appearance at future court proceedings, including trial. The Magistrate Judge found that Cheng has "every incentive to leave the United States to avoid these criminal charges." (Doc. No. 10). He lacks family and community ties to the United States, he was born and raised in China, his wife and child live in Qatar, he owns a business and has a teaching job in China, and over the past seven years he has spent over 30% of his time in China. (*Id.*). This Court finds no fault with the Magistrate Judge's reasoning, and in fact agrees with most of it, especially with the record he had before him.

On appeal to this Court, Cheng did not attack the veracity of these findings, but did attack the judge's conclusion on the basis that the Magistrate Judge did not have the complete facts at the time of ruling. Cheng has since supplemented the record and made additional arguments. The substance of Cheng's motion and various supplements to revoke detention can be summarized by the following points:

1) The law favors non-detention and the standard to be applied is not a "guarantee" of appearance at trial, but "reasonable assurance" of appearance.

2) The primary reason for the Magistrate Judge's decision was the issue of whether any set of factors could assure Cheng's appearance for court proceedings. He was not, and is not, a danger to society as a whole.

3) The nature of the charges against Cheng do not include espionage, theft of trade secrets, or other violations of dangerous or harmful conduct to the United States. The charges are based upon misrepresenting his affiliations with Chinese companies and universities.

4) While he has no family here, Cheng argues he is an American citizen and is not now a citizen of China. He has no Chinese passport and has

2

5)     relinquished his United States passport to law enforcement and so could not leave the United States legally.

5)     He attended post-doctoral studies in the late 1990s at Princeton and Harvard and has been affiliated with Texas A&M since 2004. Thus, he has a long history in academia in this country.

6)     Cheng was arrested in this case when returning to the United States. He argues if he were going to flee, he could have just remained outside the country.

7)     He has no criminal history and his potential guideline sentence would be in the 60-month range, even if found guilty at trial.

8)     He now has individuals willing to be third party custodians and numerous friends who will vouch for his character and are willing to be sureties for his appearance.

9)     Cheng is willing to put up a substantial bond or amount of property to guarantee his appearance and thus there are conditions or a combination of factors that will secure his release.

10)     Finally, Cheng's counsel points out quite adamantly that the Government has indicated that it has voluminous amounts of discovery documents that are all in Mandarin and that Cheng's ability to translate and be available to his lawyers is paramount to the preparation of a cogent defense. Cheng's incarceration, especially given the current COVID restrictions that are still in place, prohibits any effective client-lawyer communication or preparation, especially when viewed in conjunction with the language barrier that exists.

In response to these points, the Government urges the Court to leave Cheng in custody and just as adamantly points out as follows:

1)     The Magistrate Judge's findings were all correct and nothing has changed the landscape since his ruling.

2)     Cheng has a long history of deceptive conduct.

3)     Cheng has every incentive to flee. He is from China, has professional ties to the country, and spent a significant portion of his pre-arrest time in China. He has no family in the United States and at the time of his arrest did not have a livable residence in this country.

4)     Procedurally, Cheng has waived his right to rehearing.

First, this Court finds that it has jurisdiction and is not prohibited by 18 U.S.C. § 3142 from rehearing this motion. Motions to reconsider revocation orders and/or motions to rehear a detention order made by a Magistrate Judge have long been reviewable by the District Court. Further, the Court finds that arguments of counsel contain both a mixture of facts already known by the Defendant at the time he was incarcerated plus facts that have come up since the initial hearings. Thus, the procedural objections to this Court's review of the detention order are overruled.

Second, whether known or not at the time of the Magistrate Judge's ruling, this Court has been apprised of various circumstances which contribute to the possibility of there being a combination of factors that might satisfy the requirements of § 3142.

Importantly, Defendant also makes an argument under § 3142(i) that his incarceration effectively prevents his lawyers from properly preparing a defense to the Government's claims. When working through a § 3142(i) analysis, courts have looked primarily to the two factors set out in *United States v. Dupree*, 833 F. Supp. 2d 241 (E.D.N.Y. 2011) for guidance. *See, e.g., United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *6 (W.D. La. Jan. 18, 2013). The first factor considered in *Dupree* was whether the defendant had been "afforded ample time and opportunity to prepare for the trial and participate in his defense." *Id.* This factor weighs in favor of release. Cheng's trial is set for the end of November of this year, which gives the defense more time to prepare. As of the hearing on May 6, 2021, the defense had not yet received access to the evidence seized from Cheng during his arrest and had only just been provided with the evidence gathered prior to Cheng's indictment. The number of documents contained on the devices seized from Cheng alone will take time to translate and review to prepare for trial. Further, one of the devices seized from Cheng was determined to contain

4

sensitive material and is only available to view at the FBI's Regional Computer Forensics Laboratory ("RCFL"), making it impossible to review the evidence on that device without going to the RCFL to review it.

The second *Dupree* factor concerns the complexity of the case, volume of information, expense, and inconvenience. *Id.* This factor also weighs strongly in favor of release. There is no dispute that there is a large amount of evidence in this case. Forty-one devices were seized from Cheng at the time of his arrest in addition to the evidence gathered by the prosecution prior to Cheng's indictment. The nature of the evidence presents an additional complication. At the hearing on May 6, 2021, the defense argued, without contradiction, that the evidence seized from Cheng was largely in Mandarin and would be difficult to not only translate but also analyze without the help of Cheng, who is fluent in Mandarin and has knowledge of the technical nature of the documents in evidence. Moreover, visitation restrictions due to COVID-19 also complicate the defense's access to Cheng to review the evidence at the jail where he is currently held.

Having considered the two factors, this Court finds that releasing Cheng under the specified conditions is proper in order for him to best assist in preparing his defense due to the volume and complexity of the information the defense must consider to prepare for trial and the inconvenience brought about by COVID-19 restrictions.

Therefore, this Court is willing to consider the revocation of the order of detention if one of the following two sets of conditions are met (in addition to the Additional Conditions set out below):

**Set of Conditions One**

Defendant shall post $100,000 or pledge a cash bond of $100,000 from an approved surety or bail bond company, plus he shall pledge as security the following pieces of real estate:

1) 2417 Norham Dr., College Station, TX
   2020 Appraised Value: $298,306

2) 610 Hartford Dr., College Station, TX
   2020 Appraised Value: $181,585

3) 3805 Westfield Dr., College Station, TX
   2020 Appraised Value: $186,927

4) 715 Pasler St., College Station, TX
   2020 Appraised Value: $291,916

Each piece of real estate listed above must be pledged or conditionally transferred in a document (the language of which must be acceptable to the Government and the Court) that is recordable and that will immediately effectuate a transfer of title to the United States (without the necessity of foreclosure or forfeiture proceedings) should Cheng not appear as required in court. To be clear, the Defendant is required to appear at all hearings and at trial (unless excused by an order of this Court in advance).

Cheng may retain ownership of these properties, but he shall not encumber them in any fashion. He may continue to lease them and may retain any monies received as rent, but he must also maintain all properties in a good and habitable condition, and he must pay all debts related to such property including taxes and HOA payments.

**OR**

**Set of Conditions Two**

Defendant shall post a cash bond of $1,000,000 either personally or from an approved surety or bail bond company to be forfeited should Defendant fail to attend a hearing or trial (unless excused by an order of this Court in advance).

**PLUS**

**Additional Conditions**

Regardless of which of the prior two options he chooses, he must also:

1. Establish a place of residence approved in advance by Pretrial Services;

2. Submit to supervision by and report for supervision to Pretrial Services;

3. Surrender any passport to Pretrial Services (or in lieu thereof it may be kept by law enforcement officials);

4. Not obtain a passport, visa, or other international travel document;

5. Restrict all travel to Harris, Waller, Fort Bend, Grimes, and Brazos counties in Texas;

6. Avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution;

7. Not possess a firearm, destructive device, or other weapon;

8. Not use alcohol excessively;

9. Not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner;

10. Be restricted to his residence at all times except for employment, education, religious services, medical, substance abuse, or mental treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the pretrial services office or supervising officer;

11. Submit to location monitoring (Stand-Alone Monitoring with Active GPS) as directed by Pretrial Services and comply with all of the program requirements and instructions provided, including paying all or part of the cost of the program based upon ability to pay as determined by Pretrial Services;

12. Report as soon as possible to the pretrial services office or supervising officer every contact with law enforcement personnel, including arrests, questioning, or traffic stops; and

13. Not travel to an airport, seaport, or land port of entry.

If either of the two initial sets of conditions are complied with on or before August 27, 2021 and Cheng's living arrangements are approved by Pretrial Services, the Court will, in all likelihood, based upon the record before it today, grant the Defendant's Motions to Revoke.

Regardless of whether the Defendant is released as a result of this order, the Court reiterates to all sides that this case is set for trial on November 30, 2021 and the Court intends to try it on that date.

SIGNED at Houston, Texas this 10 day of August, 2021.

Andrew S. Hanen
United States District Judge