UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | Criminal No. 4:20-cr-00455 |
| | § | |
| **ZHENGDONG CHENG** | § | |

### DEFENDANT'S POST SUPPRESSION HEARING BRIEF

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ANDREW S. HANEN:

ZHENGDONG CHENG, Defendant, ("Cheng") supplements his previous briefing on his *Opposed Motion to Suppress* (ECF No. 41) post-hearing as follows:

**1.   Cheng was subject to Custodial Interrogation**

The Government's' initial response to Cheng's motion conceded that Cheng "was in custody and subject to interrogation so as to implicate *Miranda.*" Dkt. 46 at 4. This was borne out by the documentary and testimonial evidence at the hearing. [1]

S.A. Angle ("Angle") agreed that Cheng was not free to leave and was told he was detained prior to his alleged waiver. Angle further testified that agents had coordinated Cheng's return to College Station with Texas A&M University officials. According to Angle, agents planned Chng's arrest at the airport prior to securing a warrant. They planned to arrest Cheng on August 23, the day of his arrival. Agents monitored Cheng's flight change in DFW Airport from his flight from Doha, Qatar to his flight to College Station, Texas. In College Station, Agent Angle and S.A. Collier stopped Cheng leaving baggage claim and led him to a conference room the use of which they had

---

[1] References to hearing testimony is based upon counsel's recollection and notes. References to Def. Ex. 2, the FBI video transcript, are to the continuous Bates numbers on the bottom right-hand corner.

1

arranged in advance.  Additional law enforcement from the Regional Forensics Computer Laboratory (RFCL) waited in an adjacent room.  The Complaint and arrest warrant in this case were under seal and not public record.  Had Cheng declined to go with agents or walked away, S.A. Angle said they would not have let him.   The arrest warrant commanded them to arrest Cheng without unnecessary delay and bring him before a U.S. magistrate judge. Dkt. 12.  They delayed taking Cheng before a magistrate to conduct a custodial interrogation at the airport.

In the airport conference room, the door was closed, agents re-introduced themselves to Cheng, and read him his *Miranda* warnings. Def. Ex. 2 at pp. 3-4.  Prior to any alleged waiver of his rights, Cheng asked if he could go to his hotel.  *Id* at 4*.* He could not.  Cheng he was told by S.A. Collier he was being detained several times.  *Id.* at 4, 5. When Cheng twice requested to call his dean, he was told he could not by the agents.  *Id.* at 7, 11. Cheng was also told there was a warrant for his arrest. *Id.* at 7. No reasonable person in Cheng's person would have believed he was free to leave. Cheng did not. Def. Ex. 3 at p. 1.

Cheng was told by the agents that they had questions for him.  After securing the alleged waiver of rights, the agents questioned Cheng for nearly three hours about his alleged ties to Chinese Universities and purported failure to disclose these ties to Texas A&M and NASA in violation of the so-called "NASA China Funding Restriction."  *See* Def. Ex. 2 at pp. 12-131.  This, according to S.A. Angle's testimony, was the subject of their criminal investigation.  It was also the basis of the pending Criminal Complaint filed under seal days three before Cheng's interrogation.  *Id.*; Dkt. 1, pp. 3-23.  The evidence demonstrates that Defendant was, beyond any doubt, subject to custodial interrogation.

2

**2.    Cheng Unambiguously Invoked His Right to Counsel**

Concomitantly, the Government has failed to meet its burden to prove by a preponderance of the evidence that Cheng's knowingly and intelligently waived his rights. Instead, the evidence establishes that Cheng did not. "A suspect must "articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). That occurred in this case. Within seconds after being *Mirandized,* Cheng invoked his right to counsel. *See* Def. Ex. 2 at pp. 3-4.

On cross-examination, S.A. Angle testified that he viewed Cheng's invocation as "hypothetical." This is unreasonable in the conversational flow of the exchange:

> MC:   So we're going to go over a little sheet here. I already dated it. This just – I'm going to read this for you, okay? Okay. So it just says, "Before we ask you any questions you must understand your rights. You have the right to remain silent. Anything you can say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer present with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop at any time." Now you're not under arrest. But we say this because you're talking to Law Enforcement.
>
> ZC:   I…can you tell me why you…
>
> MC:   I, yeah! I absolutely can, but I – I can't before…
>
> ZC:   If you have-if you can get a lawyer, I want to have a lawyer present.
>
> MC:   You are absolutely…but we just can't talk to you if you do that right now. We can't answer any of your questions right now.

FBI S.A. Michael Collier told Cheng that if he could not afford a lawyer one would be appointed. Cheng's invocation was a natural response to that statement – that if they could get a lawyer he wanted one present. The request is not conditional or "hypothetical" because S.A. Collier had

3

literally just offered Cheng a lawyer and knew one could be appointed.  In contract terms, it was an offer (by S.A. Collier) and acceptance (by Cheng).

A reasonable police officer under these circumstances would have understood this to be a request by Cheng for an attorney.  The evidence proves S.A. Collier did.   The agent understood Cheng's request for an attorney perfectly. That is why S.A. Collier began "You are absolutely…" then pivoted to tell Cheng, "but we just can't talk to you if you do that right now."   If S.A. Collier did not understand Cheng's request as unequivocal, his immediate response to Cheng is nonsensical. Neither agent told Cheng they did not understand his request or ask him to clarify.  The agents could not have said to Cheng – *we will not or cannot get a lawyer for you*.  The only proper response to Cheng's request for counsel was to terminate the interview.  Instead of respecting Cheng's rights and terminating the interview, S.A. Collier, attempted to lure Cheng to change his mind, by telling Cheng that then the agents could not answer *Cheng's* questions that day.  The agents' efforts ultimately succeeded in obtaining a purported written wavier from Cheng.  Def. Ex. 2 at p. 11.

Cheng's Motion to suppress should be granted.

**3.    Cheng's Waiver was Also Obtained as a Result of Deception, Coercion, and Intimidation**

Additional efforts to obtain a waiver from Cheng included the agents conveying to Cheng the false impression that a waiver of rights (and later for his passwords and consent to search) would result in Cheng's momentary release.  This rendered any waiver involuntary because it was obtained by deception, coercion, or intimidation, and without Cheng's full understanding of the nature of his rights and the consequences of waiver.

Agents repeatedly told Cheng was not free to leave and that he could not call his university, p. 4, 5, 7, and 8.  S.A. Collier told Cheng that if they could not get him a lawyer today Cheng would

go to jail. *Id.* at p. 8. Cheng said, "I just need some help." *Id.* The agents then told Cheng he had a right to a lawyer, "[b]ut if-if you want an attorney, we can't talk today." Def. Ex. 2 at p. 9. The only conclusion any reasonable person would draw from the agent's statements was that if Cheng wanted an attorney, he would go to jail. Naturally, Cheng reached that conclusion and expressed concern. Def. Ex. 3 at p. 1.

Cheng told the agents, "I just want to make sure tonight that I will not get arrest." Def. Ex. 2 at p. 10. The agents told Cheng that they could not promise him anything. *Id.* S.A. At the hearing, S.A. Angle agreed with defense counsel that he could have promised Cheng that he would go to jail that evening because it was the agents' plan (and duty) to execute the arrest warrant for Cheng that day whether Cheng waived his rights or not. Rather than reveal that fact to Cheng, agents falsely suggested that there was a circumstance under which Cheng would be free to leave at the end of the interview so as to lure Cheng into waiving his rights. Had it been clear to Cheng that he would have been arrested whether he spoke with agents or not, Cheng would not have waived his rights. Def. Ex. 3. Moreover, when Cheng asked the consequences of answering the agents' questions – the agents stumbled – each suggesting the other respond before telling Cheng that he had to waive his rights to an attorney – which is not a consequence of waiver, it is simply parroting back the waiver. Def. Ex. 2 at p. 10.

This conduct rendered Cheng's subsequent waiver involuntarily "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" or with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Cardenas*, 410 F.3d 287, 293 at fn. 23 (Fifth Cir. 2005)(internal citation omitted). Cheng was deceived about the circumstances of his detention and did not understand the

5

consequences of his waiver of his rights – he was misled to believe that the consequence of waiver was freedom to leave after questioning whereas persistence in his initial invocation of counsel would result in incarceration. Moreover, the circumstances, as designed by law enforcement, were inherently coercive in that Cheng had just departed more than sixteen hours of international air travel from eight time zones away and was fatigued. *See* Def. Ex. 7.[2]

### 4. Consent to Search Luggage and Passwords Were Obtained Involuntarily And Legality of Later Search Warrants Not Relevant to this Motion

On cross-cross examination, S.A. Angle acknowledged that although agents promised Cheng that if he consented his devices would be returned in fifteen minutes, and wrote that on the Consent to Search, that was not true. S.A. Angle admitted that agents knew Cheng was not going to receive his devices back in fifteen minutes, because they were going to arrest Cheng. S.A. Angle contended that they deceived Cheng not so that they could obtain the consent to search, but so that Cheng would reveal to agents the passwords to the handful of devices that were password protected.

The Government claims the deceptions do not matter because 1) the passwords could have been compelled from Cheng; and 2) the consent to search was not actually used - later search warrants were obtained to search the devices. These arguments are unavailing. The Fifth Circuit has not held that passwords can be compelled. As noted by the Government in its reply, the 11th Circuit has held that a defendant cannot be compelled to provide a decryption password where it no more than speculates information will be on the device. *United States v. Doe (In re Subpoena Duces Tecum)*, 670 F.3d 1335, 1346 (11th Cir. 2012). As in *Doe,* here the government only knows that the

---

[2] Cheng requests the Court take judicial notice that Doha, Qatar is on Arabia Standard Time (AST or UTC+3) and was eight hours ahead of College Station, Texas, which is on Central Daylight Time (UTC -5) on August 23, 2020. Fed. R. Evid. 201(b)(2); *See* "Time and Date" converter at
https://www.timeanddate.com/worldclock/converter.html?iso=20200824T010000&p1=tz_ct&p2=1440&p3=8

devices are capable of containing relevant data, not that they actually did. *Id.* Regardless, the Search Warrants related that Cheng "consented to a search of his electronic devices and voluntarily signed a Form FD-941, "Consent to search Computers" and "provided the FBI with the passwords to each of the smart phones and the Apple iPad." *Gov't Ex.* 7 at p. 28, ¶¶60-61; *Gov't Ex.* 8, 9, 10, 11, 12, 13 at p. 24, ¶¶59-60. The inclusion of these events – and other problems on the face of the affidavits - may subject them to a separate motion to suppress at a later time. The court need not determine whether those later search warrants are valid at this time. The Court need only determine whether the provision of passwords and waiver were in violation of Cheng's constitutional rights and suppress the subsequent use of passwords as to those four devices. It may defer a ruling on the subsequent searches for non-password protected devices until such time as a relevant motion to suppress said search warrants is filed.

## CONCLUSION

Zhengdong Cheng requests the Court grant his motion and suppress the custodial interrogation of Cheng, including his oral and written statements (including passwords), consent to search, and any evidence obtained as a result thereof.

Respectfully Submitted,

/S/ *Q. Tate Williams*
Quentin Tate Williams
Texas Bar No. 24013760
Philip H. Hilder
Texas Bar No. 09620050
Hilder & Associates, P.C.
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
tate@hilderlaw.com
philip@hilderlaw.com

## **CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the foregoing instrument has been served upon the Assistant United States Attorney for the government herein, via ECF contemporaneous with filing and/or hand delivery.

                /S/ *Q. Tate Williams*
                Quentin Tate Williams