UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | No. 4:20-cr-00455 |
| § | |
| ZHENGDONG CHENG § | |

### MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS

TO THE HONORABLE ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

ZHENGDONG CHENG ("Defendant" or "Cheng") pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure, moves for disclosure of Grand Jury transcripts as follows:

### I.   SUMMARY

Cheng seeks Grand Jury transcripts to support a potential Motion to Dismiss the Indictment on due process grounds violating Cheng's Fifth Amendment right to indictment by an unbiased grand jury because it is suspected that the Government may have inappropriately instructed the Grand Jury on the law and/or misinformed the Grand Jury on material facts. NASA Grant NNX13AQ60G ("NASA Grant"), was *always* multilateral because of the Spanish collaboration which exempts it from NASA's China Funding Restriction. Cheng's previously filed Motion to Dismiss the Indictment for Failure to State an Offense, (Dkt. 69)[1] also demonstrates a strong indication that the Government may have misinformed the jury into believing that Cheng caused Texas A&M University ("TAMU") to falsely certify compliance with NASA's China Funding Restrictions. Transcripts are needed to establish the Grand Jury indicted Cheng based on the

---

[1] Cheng incorporates by reference all of his arguments, authorities, and exhibits and references in the Motion to Dismiss the Indictment for Failure to State a Claim (Dkt. 69) and any related, responsive pleadings.

1

Government's improper instructions and mischaracterizations, thereby violating Cheng's constitutional rights.

## II. STANDARDS

Federal Rule 6(e)(3)(E)(ii) permits the Court to order disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Disclosure of grand jury transcripts is appropriate where the defendant shows a "particularized need" for the materials that outweighs the policy underlying grand jury secrecy. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223-24 (1979). A party seeking grand jury transcripts must show "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* at 222.

## III. ARGUMENT

**A. Cheng's request is structured to meet his needs for Grand Jury transcripts.**

Cheng requests *all* Grand Jury testimony, including but not limited to in the following categories of information:

1. Transcripts of all persons in the Grand Jury, including prosecutors, who instructed the Grand Jury on the legal standards supporting the Indictment.

2. Transcripts of testimony, and statements of all persons and prosecutors, related to NASA's China Funding Restriction.

3. Transcripts of testimony, and statements of all persons and prosecutors, related to Texas A&M University's reporting requirements related to financial disclosures, conflict of interests, or NASA Grant certification processes.

4. Transcripts of testimony and statements of all persons and prosecutors related to Cheng's international collaboration, participation, or funding of the NASA Grant.

2

**B. The Indictment, Discovery, and Official Statements Show Cheng's Specific, non-Speculative Need for the Grand Jury Transcripts.**

    1. **The Indictment, DOJ and NASA authority, supports Cheng's specific allegations that the Government likely made inaccurate representations to convince the Grand Jury to Indict.**

Cheng's Indictment hinges on the Government's theory that Cheng's alleged misrepresentations to TAMU about his purported bilateral affiliation with "Chinese entities" "caused TAMU to falsely certify to NASA that TAMU was in compliance with NASA's China Funding Restriction regarding a NASA-funded project that TAMU sought and obtained on Cheng's behalf." (Dkt. 1 at ¶ 13). [2] Count One alleges Cheng conspired to disrupt government functions by scheming to procure a NASA Grant prohibited by the NASA Funding Restriction. Wire fraud Counts 2-8 allege Cheng used computer transmissions over the wires to carry out his alleged fraud. False statement Counts 9-17 allege that Cheng "caused TAMU to falsely certify to NASA/JPL via submission of the invoices identified below, that TAMU was in compliance with NASA's China Funding Restriction." (Dkt. 1 at ¶ 60).

There are substantial indications that Government witnesses realized the NASA Grant based on Cheng's research proposal complied with NASA's China Funding Restriction but lead the Grand Jury into believing otherwise. The Government undisputedly knew the NASA Grant involved Spanish collaborators. (Dkt. 1 at ¶ 17). Simply put, there *never was and never could be* bilateral collaboration with China as a result of Cheng's alleged undisclosed relationships because there was *always* collaboration with Spain. The "Wolf Amendment," on its face, only prohibits

---

[2] *See also*, Dkt. 1 at ¶¶ 55, 60.

3

bilateral collaboration between the United States and the People's Republic of China ("PRC"). The inclusion of any party other than the United States and the PRC renders collaboration, in this or any other case, multi- (more than two) rather than bi- (two) lateral. Any assertions otherwise are incorrect interpretations of the statute and the English language yielding improper misrepresentations to the Grand Jury of both the statute and the facts known to the Government since the NASA Grant's inception.

The Government also cites NASA's guidance[3] to ROSES[4] ("NASA Guidance") in the Indictment. (Dkt. 1 at ¶ 34). The NASA Guidance states, "work that involves investigators affiliated with institutions in other countries in addition to the PRC and USA and/or work done under the auspices of a multilateral organization is generally permitted." To indict, the Government either created the wrong impression that the NASA Grant was not multilateral or, even if multilateral, could not be funded because of Cheng's alleged affiliations with Chinese institutions.

The Indictment's plain language also shows the Government likely represented to the Grand Jury that Cheng purportedly denied the NASA Grant involved international collaboration to supposedly hide his alleged Chinese affiliations. Paragraph 17 of the Indictment states:

> who were to do theoretical modeling work. **In the section titled, "International Collaboration," which prompted the Principal Investigator, *i.e.* Cheng, to disclose whether there would be international collaboration in the grant, the proposal stated: "No."** TAMU's proposal for the

(Dkt. 1 at ¶ 17)(emphasis added). Government also likely hid from the Grand Jurors that since work on the project included Spanish collaborators (also referenced in Dkt. 1 at ¶ 17) the NASA

---

[3] NASA Science, PRC FAQ for ROSES, available at https://science.nasa.gov/researchers/sara/faqs/prc-faq-roses/.
[4] "ROSES" is an acronym for Research Opportunities in Space and Earth Sciences.

Grant became a multilateral project. As a multilateral project, TAMU could submit, and NASA could fund the Nasa Grant without violating NASA's China Funding Restriction. The Government possessed, referenced, and used information showing the Indictment's representations are inaccurate.

TAMU's NASA Grant proposal cover page, affirmatively prompted Cheng to disclose "International Participation" and the "Type of International Participation":

| SECTION II - Application Information | | | |
|---|---|---|---|
| NASA Program Announcement Number NNH13ZTT001N | NASA Program Announcement Title Research Opportunities in Complex Fluids and Macromolecular Biophysics | | |
| For Consideration By NASA Organization *(the soliciting organization, or the organization to which an unsolicited proposal is submitted)* NASA, Headquarters, Human Exploration and Operations Mission Directorate, Space Life & Physical Sciences Research & Applications, Physical Sciences | | | |
| Date Submitted 04 / 10 / 2013 | Submission Method Electronic Submission Only | Grants.gov Application Identifier | Applicant Proposal Identifier |
| Type of Application New | Predecessor Award Number | Other Federal Agencies to Which Proposal Has Been Submitted | |
| International Participation Yes | Type of International Participation Collaborator | | |
| SECTION III - Submitting Organization Information | | | |

Ex. '1'(Emphasis added).

Other sections of the NASA Grant contain further details about international (multilateral) collaboration. Section VIII, titled "International Collaboration," prompted Cheng to disclose whether "[t]his project involve[s] activities outside the U.S. or with International Collaborators." Cheng again truthfully answered "Yes," explaining both the who and what Spanish collaboration would involve:

5



Ex. '2 '(Emphasis added).

Based on the face of the Indictment, and the contents of the NASA Grant proposal it is difficult to contest that the Government knew, when drafting the Indictment, that the international collaboration made the NASA Grant *multilateral* and, consequently, exempt from NASA's Funding Restrictions. The Government used information from fields on the NASA Grant application, that researchers in Madrid, Spain "were to do theoretical modeling work," affirmatively stating the project team was comprised of international collaborators. The Indictment seems dismissive of theoretical modeling as if it were not part of the actual Nasa Grant. That premise is wrong.

The NASA Grant proposal contains a "Theoretical modeling" section where Cheng provides additional details about the Spanish investigators 'vital and ongoing roles:

6

> **Theoretical modeling**: We have established a close collaboration with the theoretical group from Spain (███████████ and ████) in understanding the phase transitions of disks. For example, after our experimental observation of the smectics phase, DFT calculations have been performed. We were able to publish the experimental and theoretical work together.[6] Another example, we have motivated and worked closely with the theoretical group to clarify the effect of polydispersity (and interactions; theoretical modeling has been published, but experiments is still being performed) among the nanoplates.[4, 23] **This collaboration will further contribute to the progress of this project.** We plan to establish models for the liquid crystal transitions (I-N-N*-TGB-S, I-S transitions; possible I-N-S tri-critical point, S-C and I-C transitions) observed and to calculate the phase transition kinetics.

Ex. '3 '(Emphasis added).

A few pages prior, Cheng made clear that the Spanish collaborators are integral parts of the "[t]he proposed project team":

> **3. The proposed project team**
>
> The PI has extensive experience in colloidal science. He participated in the NASA-sponsored Space Shuttle experiments, the Physics of Hard Spheres (PHASE[40]), and the Colloids Disorder-Order Transition-second flight (CDOT-2[41]) with ████████ and ████████ during his PhD study and one-year postdoc at Princeton. He investigated the phase behavior, crystallization kinetics, and rheology of concentrated colloidal suspensions. Specifically, the experiments revealed the long-range interaction between growing crystallites (PHASE)[38, 39], and the dendritic growth instability of colloidal crystal growth (PHASE[38] and CDOT-2[36]). He developed the temperature gradient method for controlling nucleation and growth of colloidal hard sphere crystals[24]. He is now an associate professor at the Chemical Engineering of TAMU.
>
> The project will directly support one postdoc (for the first 9 months to start the project) and two graduate students continuously work on the project, all three to be recruited. A few undergraduate students will also work with this project through REU and honor research programs. **The PI will keep fruitful collaboration with two theoreticians from Spain,** ████ **and** ████ [6, 23]. **Please see their support letter.**

Exhibit '4 '(Emphasis added).

The NASA Grant proposal "support letters" also clarify the international Spanish collaborators were neither incidental, nor belatedly added to the scientific project NASA ultimately funded:

7



Ex. '5 '(Emphasis added). The letter's acknowledgement "[t]his is a fruitful collaboration…We plan to continue this collaboration," confirms Cheng and the Spanish researchers agreed to work together on the NASA project because of prior, similar scientific endeavors. The description of the Spanish researchers' roles in the NASA project and their positions at two, major Spanish Universities demonstrates the international collaborators, would provide essential, ongoing scientific contributions, including a theoretical framework and analyzing experimental results.

NASA itself touted Cheng's leadership of this multilateral scientific project. The Government, and its NASA investigative colleagues, knew the NASA Grant was overseen by NASA's Glenn Research Center ("NASA/Glenn"). A 2016 NASA/Glenn presentation entitled "Fluid Studies on the International Space Station," advertised Cheng's Principal Investigator ("PI") role, leading a multi-national (multi-lateral) team including both Spanish *and* Russian collaborators[5]



Ex. '6' (emphasis added).

---

[5] Motil, Brian J., "Fluid Studies on the International Space Station" NASA Glenn Research Center (November 9, 2016) at p. 27, Available at https://ntrs.nasa.gov/citations/20170007274 (last viewed November 19, 2021).

9

## 2. The Grand Jury's Decision to Indict would be Substantially Affected by Improper Legal Instructions and/or Factual Misrepresentations about the NASA Grant and NASA's China Funding Restriction.

The Indictment depends on the allegation "Cheng caused TAMU to falsely certify" compliance with NASA's China Funding Restriction. (Dkt. 1 at ¶¶13, 55, 60). The Government's false certification case is highly technical. As such, the Grand Jury relied on the Government to provide accurate interpretations of a complex regulatory scheme. The Grand Jury also relied on the Government to offer accurate explanations of the NASA Grant's project and participants.

There is ample reason to believe the Grand Jury would have not decided to indict on any Count if the Grand Jury were informed the NASA Grant was multilateral and the NASA Funding Restriction did not apply to multilateral scientific projects. The Indictment strongly suggests the Government made inappropriate statements to the Grand Jury to the effect that the NASA Grant was bilateral and therefore violated NASA's China Funding Restriction. Nonetheless, Grand Jury transcripts are needed to prove the Government's suspected legal and/or material factual misstatements, rather than the Grand Jury's independent functioning, caused the Grand Jury to indict Cheng.

## 3. It is Reasonable to conclude that the Grand Jury was improperly instructed on the law as it applied to Cheng.

It is reasonable to conclude the Grand Jury was misinformed based on prior government filings and testimony. First, the Affidavit in Support of Criminal Complaint and Arrest Warrant ("Affidavit")[6] misstates the law as it applies to Cheng to support his arrest. The Affidavit

---

[6] See, *United States v. Cheng*, In the United States District Court, Southern District of Texas, Case No. 4:20-mj1511, Dkt. 1, filed August 20, 2020.

10

concludes Cheng "knowingly violated NASA regulations by participating, collaborating, or coordinating bilaterally with China and Chinese-owned companies and entities." (Affidavit at p. 19). The NASA Grant is multilateral *not* "bilateral" as stated by the Government's agent.

Second, the Government's same legal misstatements were echoed during Cheng's October 2021 Suppression Hearing. During the hearing, the Government presented testimony that NASA could not fund a China-affiliated project. (Tr. p. 17, lns. 10-12). Under cross-examination, the Government's agent admitted that NASA's Funding Restriction prohibits *bilateral* coordination with China but *does not* blanketly prohibit a*ny* collaboration with China. (Tr. p. 42 lns. 16 – 18).

**C**. **Cheng's 5th Amendment Rights are Violated by a Mislead Grand Jury**

The Grand Jury transcripts are needed to determine whether the Government mislead the Grand Jury about material facts and misinformed it about the law underlying the Indictment's alleged offenses. Such actions would violate Cheng's Fifth Amendment right to indictment by an unbiased grand jury and provide the basis for dismissing the Indictment with prejudice because of improper manipulation.

Courts hold the power to preserve judicial integrity by ensuring a conviction is founded upon appropriate considerations that are validly before the jury, to implement remedies for violation of recognized rights and deter illegal conduct. *United States v. Hastings*, 461 U.S. 499, 505 (1083). Courts' supervisory power should be exercised to dismiss an indictment when the Government knowingly uses improper and false information before the grand jury. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257-8 (1988); *United States v. Williams*, 504 U.W. 36, 46 (1992); *United States v. Strouds*, 286 F.3D 767, 772 (5th Cir. 2002).

Dismissal is appropriate when the defendant is prejudiced by "errors in grand jury proceedings." *United States v. Whitfield*, 590 F.3D 325, 359 (5th Cir. 2009)(*quoting Bank of Nova*

11

*Scotia*, 487 U.S. at 263). Dismissal is also merited if there it's "grave doubt" that the decision to indict was free from substantial influence of such violations. *Bank of Nova Scotia*, 487 U.S. at 256. Prosecutorial misconduct prejudices a defendant if it affected the grand jury's decision to indict. *Whitfield*, 590 F.3D at 359.

It is difficult to imagine how a properly informed / instructed grand juror could have indicted Cheng absent receiving misinformation from the Government. The Indictment, the NASA Grant, and other evidence adduced thus far provide ample reason to believe that the Government made misstatements about material facts and/or the law regarding the NASA Grant, its multilateral participants, and the inapplicability of the NASA Funding Restriction to the multilateral NASA Grant. Cheng should be allowed to review the entire Grand Jury transcript for prejudicial, material factual misstatements and mis-instructions about the law underlying his alleged crimes resulting in his indictment in violation of his Fifth Amendment rights.

**D.     Cheng's Need for Disclosure Outweighs Grand Jury Secrecy.**

The policy considerations behind the secrecy of grand jury proceedings include: 1) preventing the escape of those who might be indicted, 2) preventing interference with the grand jury's deliberation, 3) interference with witnesses who testify at the grand jury and who may later testify at trial, 4) encouraging witnesses to disclose information, and 5) protecting those innocently accused and exonerated by a grand jury. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 fn. 9.

Disclosure of Cheng's Grand Jury transcripts would not implicate any of the foregoing policy concerns. First, preventing pre-indictment flight, is a nullity since Cheng is already indicted and released on bond with restrictive conditions. Second, interference with grand jury deliberations, is likewise moot since the Grand Jury already deliberated. Third, Cheng is not

involved in organized or violent crime. Cheng as a distinguished Professor of Chemical Engineering, with no criminal history, who poses no threat to any witnesses, whether they appeared before the Grand Jury or not, as his conduct while released on bond attests. The fourth factor is also moot since grand jury witnesses have already testified. The final factor is also inapplicable, as well, because Cheng is indicted.

WHEREFORE, Cheng requests that the foregoing Motion be granted in its entirety. In the alternative, Cheng requests that this Court conduct an *in camera* review of the Grand Jury transcripts and, upon review, grant this Motion in its entirety.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

/s/ *Philip H. Hilder*
Philip H. Hilder
TBN 09620050
Q. Tate Williams
TBN 24013760
James G. Rytting
TBN 24002883
Stephanie K. McGuire
TBN 11100520
819 Lovett Blvd.
Houston, Texas 77006-3905
Telephone (713) 655-9111
Facsimile (713) 655-9112
tate@hilderlaw.com
philip@hilderlaw.com
james@hilderlaw.com
stephanie@hilderlaw.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

  I hereby certify that on a true and correct copy of the above and foregoing motion was served on all counsel of record contemporaneous with filing.

            /s/ *Philip H. Hilder*
            Philip H. Hilder

**CERTIFICATE OF CONFERENCE**

  On November 19, 2021, undersigned counsel was informed by the AUSA that the Government is OPPOSED to this Motion.

            /s/ *Philip H. Hilder*
            Philip H. Hilder

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | No. 4:20-cr-00455 |
| | § | |
| ZHENGDONG CHENG | § | |

### ORDER ON DEFENDANT'S OPPOSED MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS

Pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure, Defendant's Motion for Disclosure of Grand Jury Transcripts is hereby GRANTED / DENIED.

The Government shall, disclose counsel for Cheng, the transcripts of the entire Grand Jury including but not limited to all testimony related to the following:

1. Transcripts of all persons in the Grand Jury, including prosecutors, who instructed the Grand Jury on the legal standards supporting the Indictment.

2. Transcripts of testimony, and statements of all persons and prosecutors, related to NASA's China Funding Restriction.

3. Transcripts of testimony, and statements of all persons and prosecutors, related to Texas A&M University's reporting requirements related to financial disclosures, conflict of interests, or grant certification processes.

4. Transcripts of testimony and statements of all persons and prosecutors related to Cheng's international collaboration, participation, or funding.

Signed this _____ day of _____, 2021.

_____
Andrew S. Hanen
United States District Judge