UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | No. 4:20-cr-00455 |
| | § | |
| **ZHENGDONG CHENG** | § | |

### DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO MOTION TO DISMISS FOR FAILURE TO ALLEGE AN OFFENSE

TO THE HONORABLE ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

ZHENGDONG CHENG, Defendant ("Prof. Cheng"), replies to the "United States' Response to Defendant's Motion to Dismiss for Failure to State an Offense" ("Response")(Dkt. 71) as follows:

### INTRODUCTION

The Government's Response ignores the plain text of both the so-called NASA China Funding Restriction and the Indictment. The Government does not, because it cannot, dispute that the NASA China Funding Restriction only applies to *bilateral* activities with China. It also does not dispute that the Grant involved collaboration with Spain from its inception, as stated on the face of the Indictment. Instead, the Government responds to arguments Cheng did not make with legal theories it has not alleged.[1] As Cheng demonstrated, *all* counts in the Indictment are premised on the materiality of the NASA China Funding Restriction. This premise is undermined by the Indictment's facial acknowledgement that there was collaboration with Spain in the Grant from its inception.

---

[1] The Response repeatedly states that Cheng admits, concedes, or does not dispute the factual allegations in the Indictment in his motion. *See e.g.,* Response at fn. 2. This is incorrect, bordering on fatuous. Moreover, the Response introduces extraneous criminal conduct outside the Indictment for no apparent purpose other than to prejudice the Court against Cheng. *See* Response at fn. 1.

1

According to ¶17 of the Indictment, the NASA grant was bilateral with Spain *at its inception.* Therefore, it could *never* have involved *bilateral* activity with China. Even *if* Cheng concealed or misrepresented what he is accused of, any materiality of the prohibition, declarations, etc., was illusory, *ab initio.* The alleged addition of Chinese participation through Cheng (disclosed or undisclosed) rendered it multilateral and thereby outside the express terms of the NASA China funding restriction.[2] As a result, the Indictment fails to state an offense because the alleged misrepresentations to NASA regarding compliance, on which each Count is based, were not material as a matter of law and *no* offense has been stated.[3]

The Court need look no further than the face of the Indictment to reach this conclusion. The Government's Response depends on lulling this Court into believing that the NASA China Funding Restrictions are incidental to the theories of prosecution, a notion disproven by the text of the Indictment.

**A.    The Indictment Expressly Depends Entirely on NASA's China Funding Restriction.**

The Response claims that "[v]iolations of the China Funding Restriction are not, however, the basis for the charged offenses." Resp. at 8.[4] This argument is contradicted by any rational reading of the Indictment. The entire Indictment is organized around, quotes, repeats, and

---

[2] The Government describes the evidence of Russian involvement as "disputed," despite that this information came *from NASA's own website*, made by an official who supervised Cheng, the hyperlink to which was provided. Moreover, on November 11, 2021, Cheng made a written discovery request to the Government for any and all materials related to international collaboration on the Grant pursuant to *Brady v. Maryland,* 373 U.S. 83, 87 (1963), *United States v. Bagley,* 473 U.S. 667, 675-78 (1985), and *Schultz v. Commission for Lawyer Discipline of the State Bar of Texas,* No. 55649, 2015 WL 9855916 at *12 (State Board of Disc. Appeals 2015). The Government has not yet produced *any* items in response, a failure which may necessitate Court intervention to enforce its September 14, 2021, Order (Dkt. 56).

[3] That NASA included unnecessary assurances of China Funding restriction compliance in its boilerplate grant documents is of no consequence. Evidence produced to Defendant reveals that NASA bureaucracy includes the language in *all* grant documents. Since the restrictions did not apply to this Grant the misrepresentations could not have been material.

[4] If true, then it is not clear what the Government's theory of prosecution is and a bill of particulars should be ordered. This assertion further demonstrates the necessity of disclosure of the Grand Jury transcript. In all likelihood, the grand jurors were informed otherwise and would be shocked to learn that NASA's China Funding Restrictions are not the basis for the charges against Cheng.

references NASA's China Funding Restrictions. The Government chose to expressly mention the restrictions in paragraphs 2, 9, 13, 14, 18, 19, 20, 21, 23, 33, 34, 35, 37, 40, 48, 55, and 60, and implicitly reference it in most other paragraphs. Many of the unnumbered italicized subheadings in the Indictment also incorporate the NASA China Funding Restriction.[5] The centrality of the NASA China Funding Restrictions is made clear on the first page of the Indictment immediately after describing NASA, stating;

> 2. In 2011, Congress passed The Department of Defense and Full-Year Appropriations Act, Public Law 112-10 and the Consolidated and Further Continuing Appropriations Act of 2012, Public Law 112-55. Under these Acts, NASA was prohibited from using appropriated funding to enter into or fund any grant or cooperative agreement of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company ("NASA's China Funding Restriction").

The Indictment goes on to describe the inclusion of restriction language in the Grant, stating,

> 9. Cheng was part of a research team that applied for, and ultimately received, a $746,967 grant to conduct research for NASA. NASA regulations for the grant Cheng's team applied for prohibited recipients from participating, collaborating, or coordinating bilaterally with China, any Chinese-owned company, or any Chinese university, at the prime recipient level or at any sub-recipient level, whether the bilateral involvement was funded or performed under a no-exchange of funds arrangement.

The Indictment, then connects the dots between these two in Paragraph 13, alleging that,

---

[5] *See e.g., "Relevant Grant Restrictions,"* Dkt. 1. at 5. *"Other Indicia that Cheng Was Aware of NASA Restrictions,"* Dkt. 1 at 16; *"Cheng Knowingly Violated NASA Regulations by Maintaining Associations with Prohibited Chinese Entities,"* Dkt. 1 at 17; *"Along with His Co-Conspirators, Cheng Knowingly Violated NASA Regulations by Participating, Collaborating, or Coordinating Bilaterally with China and Chinese -owned Companies and Entities,"* Dkt. 1 at 18.

> Science and Technology in or about June 2018. ==Cheng's fraudulent representations and omissions to TAMU about his affiliations caused TAMU to falsely certify to NASA that TAMU was in compliance with NASA's China Funding Restriction regarding a NASA-funded project that TAMU sought and obtained on Cheng's behalf. Had Cheng fully disclosed to TAMU his affiliations with GDUT and other Chinese entities, TAMU would not have certified to NASA that TAMU was in compliance with NASA's China Funding Restriction, and NASA would not have awarded NASA-funded projects to Cheng.==

In other words, the entire Indictment is premised on the theory that because the Grant was subject to the NASA China Funding Restriction, that Cheng's alleged omissions in his disclosure were material because they caused NASA to award a Grant to TAMU (and Cheng) that NASA would not have otherwise. Were this not already abundantly clear, this purported materiality is expressly stated in ¶55 (Count I),

> 55. From in or about 2014 through the date of this Indictment, in the Southern District of Texas and elsewhere, the defendant, ZENGDONG CHENG, did unlawfully, willfully, and knowingly conspire, confederate and agree with other individuals both known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of NASA by concealing his affiliations and collaborations with Chinese institutions and companies during the performance of the NASA Grant ==thereby circumventing NASA's China Funding Restriction in order to receive U.S. Government funding.==

> In violation of Title 18, United States Code, Section 371.

The remaining counts incorporate the foregoing paragraphs of the Indictment by reference. Dkt. 1 at ¶¶ 56 and 59. The purported material facts the basis of the wire fraud and false statement counts are the allegedly false assurances of compliance with the NASA China Funding

4

Restrictions. Without the applicability of the NASA China Funding Restriction, there is no materiality on the face of the Indictment.

**B.   The Indictment Expressly Recognizes International Collaboration on the Grant which Renders the NASA China Funding Restriction Inapplicable.**

Paragraph 17 of the Indictment acknowledges that the Grant proposal included collaboration with Spain, stating:

> 17.   In April 2013, TAMU submitted its grant proposal to NASA. TAMU's proposal for the Grant omitted any involvement with individuals/entities in China and clearly stated that the PI, the Co-Investigator, Equipment, and Facilities did not involve activities outside the U.S. or partnerships with international collaborators, ==other than collaborators from Madrid, Spain,== who were to do theoretical modeling work. In the section titled, "International Collaboration," which prompted the Principal Investigator, *i.e.* Cheng, to disclose whether there would be international collaboration in the grant, the proposal stated: "No." TAMU's proposal for the

Dkt. 1 at ¶17 (emphasis added).

This disclosure made clear to NASA (and this Court) that the Grant proposal TAMU submitted would include collaboration with other countries. Consequently, the performance of the Grant could never have ever been *bilateral* with China. It might, assuming *arguendo* the Government's allegations about Cheng's ties are true, have involved *trilateral* or *multilateral* collaboration with Spain and China, but not *bilateral* with China.

Recognizing that the ordinary usage of "bilateral" in the statute will not lead to its desired outcome, the Government's Response concludes with two additional arguments, each of which fails. The Response suggests that all parties' mutual mistake about the applicability of the NASA China Funding Restriction to the Grant is a substitute for actual materiality. Finally, the Government argues that inclusion of the statutory "bilateral" language and the acknowledgement

5

of Spanish collaboration alongside a contradictory allegation that the Grant was "'subject to' NASA's China Funding Restriction'"- raises a fact issue for a jury to decide, saving it from dismissal.[6]  Neither argument detracts from the inescapable conclusion on the face of the Indictment that any alleged collaboration with China was immaterial because the Grant already involved collaboration with Spain.

There can have been no conspiracy, no wire fraud, and no false statement, because the NASA China Funding Restrictions were not applicable to the Grant.

### Conclusion

Zhengdong Cheng, Defendant, requests that his Motion be granted and the Court dismiss all counts of the Indictment with prejudice.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

/s/ *Philip H. Hilder*
Philip H. Hilder
State Bar No. 09620050
Q. Tate Williams
TBN 24013760
James G. Rytting
TNB 24002883
Stephanie K. McGuire
TBN 11100520
819 Lovett Blvd.

---

[6] That the Government would prosecute an ill-conceived China Initiative case is not unusual. The Department of Justice recently dismissed visa fraud prosecutions against five Chinese researchers after *Brady* material was belatedly disclosed and then publicly filed by a Defendant revealing, among other matters, that that two FBI analysts found the question about military service on the visa applications (the basis of the prosecution) was unclear. Elizabeth Redden, *China Initiative Cases Dismissed,* Inside Higher Ed (July 26, 2021) available at *https://www.insidehighered.com/news/2021/07/26/prosecutors-drop-cases-against-scientists-accused-hiding-military-ties* (last viewed December 23, 2021); Arana Viswantha, *U.S. Drops Visa Fraud Cases Against Five Chinese Researchers,* Wall Street Journal (July 23, 2021) available at https://www.wsj.com/articles/u-s-drops-visa-fraud-cases-against-5-chinese-researchers-11627074870; *United States v. Tang Juan,* Case No. 2:20-cr-00134-JAM, ECF No. 195 at pp. 5-7 and ECF No. 213 (E. Dist. Cal. 2021).

Houston, Texas 77006-3905
Telephone (713) 655-9111
Facsimile (713) 655-9112
tate@hilderlaw.com
philip@hilderlaw.com
james@hilderlaw.com
stephanie@hilderlaw.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on a true and correct copy of the above and foregoing motion was served on all counsel of record contemporaneous with filing.

/s/ *Philip H. Hilder*
Philip H. Hilde