**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | No. 4:20-cr-00455 |
| | § | |
| **ZHENGDONG CHENG** | § | |

**REPLY TO GOVERNMENT'S RESPONSE TO CHENG'S MOTION**
**FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS**

TO THE HONORABLE ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

Defendant Zhengdong Cheng ("Cheng") files this Reply to the Government's Response

(Dkt. 75) to his Motion for Disclosure of Grand Jury Transcripts, as follows:

## I.  INTRODUCTION

In the Motion for Disclosure of Grand Jury Transcripts, (Dkt. 72) ("Motion for

Disclosure") Cheng specifically alleged (supported with documentary evidence) that the

Government knew, when it took this case to the Grand Jury, that Grant NNX13AQ60G ("NASA

Grant") involved international participation in the form of scientific collaboration with professors

in mathematics and physics departments of two Spanish universities. Dkt. 72 at 3-4. The

Government was also aware that the plain language in the Wolf Amendment ("NASA's China

Funding Restriction) meant the funding restriction applied to bilateral, not multilateral,

arrangements with China.  *Id.* And the Government was aware, or recklessly disregarded the fact,

that NASA, through Guidance to ROSES ("Guidance") researchers, had publicly advised that the

China Funding Restriction *did not apply* to scientific projects that also included investigators based

outside the United States and China. *Id.*

1

The Indictment itself demonstrates that the Government not only convinced grand jurors that the NASA Grant was a bilateral arrangement with China, which NASA could not fund, but also convinced the Grand Jury that Cheng had denied the NASA Grant's use of international participation to hide that supposed bilateral arrangement. *Indictment* ¶¶ 13, 17. Consequently, Cheng seeks Grand Jury transcripts to prove that such false representations were the reasons why the Grand Jury indicted him.

The Government's Response is a series of diversionary arguments and mischaracterizations of Cheng's position, which are addressed below:

**II. REPLY**

**A.     Government's contention that Cheng advances a "novel factual theory" heretofore unknown to the Government is unbelievable.**

The Government describes Cheng's position that NASA's China Funding Restriction does not apply to multilateral arrangements as a "novel factual theory." Dkt. 75 at 10. That description is an oblique, if still obvious, attempt to negate the Government's intentional misconduct through insinuated ignorance of the implications of the NASA Grant's multilateral status.  However, the "factual theory" that multilateral arrangements are exempt from NASA's China Funding Restriction is anything but novel. Cheng's "factual theory" is straight from NASA's Guidance for Research Opportunities in Space and Earth Sciences ("ROSES") researchers, a document the Government expressly mentioned in the Indictment. Dkt. 1 at ¶ 14(d).  To be sure, the Indictment mentions a different provision, which distinguishes between Chinese citizens and institutions, but the same, short Guidance contains language advising grant applicants that: "**work that involves investigators affiliated with institutions in other countries in addition to the PRC and USA**

2

**and/or work done under the auspices of a multilateral organization is generally permitted**" rather than prohibited by NASA's China Funding Restriction.[1]

From the time NASA published the Guidance for ROSES researchers, major research institutions have published and been guided by Cheng's "novel factual theory" that multilateral arrangements are exempt from NASA's China Funding Restriction, including the University of California System and Princeton University, which informs faculty that:

> This restriction applies to bilateral activities with China or any Chinese-owned company.  It does not apply to multilateral activities.  Nor does it restrict the participation of Chinese students or visiting scholars in NASA projects.  Rather the restriction applies to engagement with the government of China or Chinese-owned companies on NASA projects.[2]

**B.    Grand Juries can be biased by Government misinformation.**

The Government contends Cheng must demonstrate some internal bias amongst grand jurors. Dkt. 75 at 8.  However, Government misconduct, including misrepresentations of law and fact, can be an external source of bias.  *See United States v. Peralta*, 763 F.Supp. 14, 19 (S.D.N.Y.1991) (indictment dismissed where government's instruction on law were erroneous and misleading).  Furthermore, Cheng does not have to prove Government misconduct in his motion. The standard is whether Cheng's motion rests on specific allegations of misconduct and demonstrates a particularized need.  *See United States v. Torres*, 901 F.2d 205, 233 (2d Cir.1990) (abrogated on other grounds, *United States v. Marcus*, 628 F.3d 364 (2d Cir.2010)).

---

[1] National Aeronautics and Space Administration "NASA SHARE THE SCIENCE, For Researchers: SARA PRC FAQ for ROSES, https://science.nasa.gov/researchers/sara/faqs/prc-faq-roses (last viewed December 30, 2021) (emphasis added).

[2] Princeton University, Research & Project Administration, "NASA Guidance" (Last updated June 8, 2021) available at   https://orpa.princeton.edu/resources/inappropriate-foreign-influence/nasa-guidance    last   viewed December 30, 2021).

**C.   Far from speculative, Cheng's Motion for Disclosure is based on documentary evidence indicating the Government misled the Grand Jury.**

The Government complains that Cheng makes vague and "overtly speculative" allegations. Dkt. 75 at 4.   However, the Government pointedly ignores Cheng's argument and evidence documenting the high probability that the Government made false statements to the Grand Jury about international participation and collaboration on the NASA Grant. Transcripts are necessary to definitively prove misconduct. Until then, Cheng's use of measured or probabilistic language is not a fault.

Cheng's primary argument for disclosure of Grand Jury arguments is that, in order to secure an indictment, the Government falsely represented that Cheng intentionally and knowingly caused TAMU to submit, and NASA to fund, a Grant that federal law prohibited. The allegations are based squarely on language in Indictment ¶ 13, which states that,

> Cheng's fraudulent representations and omissions to TAMU about his affiliations caused TAMU to falsely certify to NASA that TAMU was in compliance with NASA's China Funding Restriction regarding a NASA-funded project that TAMU sought and obtained on Cheng's behalf.

Dkt. 1 at ¶13. In support of the allegation that the Government's misrepresentations regarding the fundable status of the NASA Grant were intentional, or made with "reckless disregard for the truth,"[3] Cheng provided documentary evidence indicating that the Government misled the Grand Jury into concluding that Cheng had failed to disclose to NASA that the scientific project he proposed involved international collaboration.  Dkt. 72 at 4-9.

NASA Grant documents produced by the Government, and referenced in the Indictment, show Cheng clearly informed NASA that international collaborators outside the US and China would be making important contributions to the NASA Grant's scientific project.  At no point does

---

[3] *See Miller v. Prince George's Cnty., Maryland*, 475 F.3d 621, 627 (4th Cir. 2007),

the Government try to explain *why* grand jurors, according to Indictment ¶17, concluded that, nonetheless, Cheng had *denied* that international collaborators would be working on the NASA Grant. The Government can be the only source of Grand Jury misconceptions. The Government fails even to address this, as it cannot be explained away.

**D.      Cheng does not complain that Government failed to present exculpatory evidence to the Grand jury.**

The Government contends that Cheng protests "the quality and adequacy of the evidence considered by the grand jury," (Dkt. 75 at 9) and the Government's failure to present exculpatory evidence.  The Government completely mischaracterizes Cheng's position.  Cheng complains that the Government made intentionally or recklessly false representations that the NASA Grant was a bilateral arrangement with China that NASA could not fund, made false representations that Cheng denied international collaborators would be working on the Grant, and Cheng made false statements causing TAMU to falsely certify compliance with NASA's China Funding Restrictions. The fact that evidence disproving the Government's (mis)representations is also exculpatory does not negate the basis of his Motion for Disclosure, which is misconduct, not failure to advise grand jurors of defensive theories.

**E.      Cheng's Motion for Disclosure does not depend on facts to be tried to a jury.**

According to the Government, Cheng's "multilateral" theory is a "novel" and "disputed factual theory contradicted by contemporaneous evidence." Dkt. 75 at 14. However, the Government produces *no* evidence, contemporaneous or aged, showing a contradiction.  Of course, whether the NASA Grant involved international collaboration from countries other than China is an indisputable matter of fact according to the *very* NASA Grant proposal the Government claims is fraudulent, NASA's public statements, and other evidence.  Further, the inclusion of Spanish collaborators as partners providing essential scientific contributions made the NASA Grant *means*

5

*that there never was and could never be* bilateral collaboration with China because there was always collaboration with Spain making the NASA Grant multilateral by definition.

In response to Cheng's actual "contemporaneous evidence" proving the multilateral status of the NASA Grant, such as letters of support from the Spanish collaborators and a description of their ongoing contribution in the Grant itself, the Government pronounces that "this evidence does not show that NASA Grant work was multilateral." Dkt. 75 at 11. The Government does not deny Spanish (or later Russian) collaboration or explain what else is needed for work on a grant to qualify as multilateral, let alone produce "contemporaneous evidence" that grants involving international collaborators outside the US and China are, nonetheless, not multilateral or how it explained this disjointed "logic" to the Grand Jurors.

**F.      Government did not disclose the basis of Cheng's multilateral theory to the Grand Jury.**

The Government suggests that Grand Jurors were informed of facts underpinning Cheng's "novel factual theory" that multilateral grants are exempt from NASA's China Funding Restrictions. Dkt. 75 at 10-11. In support, the Government points to the Indictment's references to "Spanish collaborators" and to the "bilateral language" in NASA's China Funding Restriction. *Id.* The Government's position has affinities with attempts to justify failure to disclose *Brady* material on grounds that the defense had access to equivalent information. However, this simply underscores the need for Grand Jury transcripts.

The Government insists that Cheng is relying on a "novel factual theory," unheard of until Cheng raised it in his Motion to Dismiss. Dkt. 75 at 14. Clearly if the Government had not conceived of such a "novel" possibility, the Government could not have informed Grand Jurors that the NASA Grant may be fundable due to involvement of international collaborators nor given them the wherewithal to draw that conclusion. Instead of absolving the Government, references

6

in the Indictment to the Spaniards and "bilateral language" supports Cheng's argument that in the Grand Jury proceedings the Government dismissed the significance of the Spanish investigators and falsely represented that the NASA Grant was a bilateral arrangement with China that NASA could not fund.  Transcripts should be produced to resolve this dispute.

**G.     Cheng's Motion for Disclosure does not rise and fall with his Motion to Dismiss for Failure to State an Offense.**

The "Motion to Dismiss for Failure to State an Offense" (Dkt. 69) does not require a showing of misconduct.  On the other hand, Cheng's Motion for Disclosure presents distinct justifications for dismissal based on misconduct, namely, false and reckless representations by the Government that (1) Cheng denied international collaboration on the Grant in order to hide bilateral relations with China, and (2) procured funding for a Grant involving those bilateral arrangements with the knowledge that NASA was prohibited from supporting it.  Transcripts that Cheng seeks are calculated to prove that the Grand Jury returned an indictment because of such knowing and reckless misrepresentations.

**H.     The idea that Grand Jury secrecy must be maintained because Cheng poses a threat by proximity to witnesses is meritless**.

The Government completely ignores the significance of the fact that Cheng seeks *post* indictment disclosure of transcripts, which largely negates the Government's need for secrecy.  *See Douglas Oil Co. v. Petrol Stops NW*, 441 U.S. 211, 218-19 (1979). The Government offers a single reason to countervail Cheng's showing of particularized need: Cheng's "likely access and proximity" to "colleagues, coworkers and employers" who may have provided information to the Grand Jury.   The Government makes no attempt to explain what alleged nefarious ways Cheng might use his access and proximity or his failure to do thus far.  If proximity and access alone were the dispositive reasons the Government makes it out to be, transcripts would remain confidential

except in odd cases in which witnesses to an offense are located outside the federal district in which the offense occurred.

More importantly, this argument assumes that witnesses beyond federal agents testified before the grand jury (which may not have occurred) and ignores that the Government has already provided voluminous discovery including information (memorandum of interviews with witnesses, electronic mail, university records, etc.) provided to federal law enforcement by persons or entities under the umbrella of "colleagues, coworkers, and employers" and yet, nothing has occurred justifying any continued secrecy.

**H.     This Court can limit disclosure of transcripts.**

In the Motion for Disclosure, Cheng categorized several areas of Grand Jury testimony necessary to prove his allegations. The Court can exercise discretion to limit disclosure to those categories. This will mute the Government's complaint that Cheng asked for all Grand Jury transcripts in violation of requirements to submit a structured request.   Moreover, the Court can enter an appropriate protective order, if necessary, to address any other concerns regarding access, review and/or dissemination of these materials.

**CONCLUSION**

Zhengdong Cheng respectfully requests that his motion be granted.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

/s/ *Philip H. Hilder*
Philip H. Hilder
State Bar No. 09620050
Q. Tate Williams
TBN 24013760
James G. Rytting
TBN 24002883
Stephanie K. McGuire
TBN 11100520

8

819 Lovett Blvd.
Houston, Texas 77006-3905
Telephone (713) 655-9111
Facsimile (713) 655-9112
tate@hilderlaw.com
philip@hilderlaw.com
james@hilderlaw.com
stephanie@hilderlaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on a true and correct copy of the above and foregoing REPLY was served on all counsel of record contemporaneous with filing.

/s/ *Philip H. Hilder*
Philip H. Hilder