United States District Court
Southern District of Texas
**ENTERED**
January 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| *Plaintiff*, § | |
| § | |
| v. § | CRIMINAL ACTION NO. 4:20-CR-455 |
| § | |
| ZHENGDONG CHENG, § | |
| *Defendant*. § | |

## ORDER

Before the Court are Defendant Zhengdong Cheng's ("Cheng") Motion to Dismiss for Failure to Allege an Offense (Doc. No. 69), the Government's Response in opposition (Doc. No. 71), and Cheng's Reply (Doc. No. 76). Having considered the relative merits of Cheng's arguments, the Court hereby denies the motion.

### I.

The background of this case is important, but the Court will limit its recitation to those facts pertinent to the instant motion. Cheng is, or at least was, a professor at Texas A&M University ("TAMU"). TAMU sought a grant ("NASA-TAMU grant") from the National Aeronautics and Space Administration ("NASA") to do research. Through TAMU, Cheng's relationship with Chinese-controlled entities was questioned by NASA, the putative grantor of the research funds, and each time he allegedly lied about these Chinese connections. The Government alleges that, at the same time he was a professor at TAMU and at the same time he was listed as the principal investigator on the NASA-TAMU grant, Cheng had multiple undisclosed ties with various entities owned, controlled by, or affiliated with the government of China. In summary, the grand jury indicted Cheng on one count of conspiracy, seven counts of wire fraud, and nine counts of making false statements throughout this grant process. Underlying

each count is the Government's claim that Cheng lied about his various Chinese affiliations in order to secure the grant money because he either knew, or was at least aware, that these affiliations would destroy any chance of TAMU receiving the funds.

## II.

In his Motion to Dismiss, Cheng does not attack either the actual sufficiency of the legal allegations or a factual insufficiency of the contentions contained in the indictment. Instead, he focuses on the underlying basis for the entire circumstances leading to this prosecution. Some years ago, Congress placed certain funding restrictions upon NASA. They restrict NASA from expending monies on certain projects involving the Chinese government or those involved with the Chinese government. These have been referred to by both parties as NASA's "China Funding Restriction." Cheng focuses on the statutory language that appears to modify (or limit) the application of the China Funding Restriction to "bilateral" agreements. Cheng argues that the agreement in this case clearly contemplated the use of Spanish researchers to do certain kinds of theoretical modeling.[1] Assuming that to be true, Cheng concludes the NASA-TAMU grant was "multilateral" and, therefore, the grant was not subject to the Congressionally imposed restrictions. Thus, he contends that since the legislation did not apply to this grant, there is no basis upon which to prosecute him for allegedly lying to avoid the restriction. Put another way, Cheng's argument is that the entire indictment hinges on the misassumption that the China Funding Restriction applied to the NASA-TAMU grant and that, if it did not, Cheng's statements, whether true or not, cannot be the basis of a criminal charge.

---

[1] According to Cheng's brief, there was also Russian involvement in the research project. The extent and description of that involvement has not been presented to the Court, but Cheng's argument (and hence the result here) would be the same with or without involvement from Russia due to the involvement of the Spanish researchers. (Doc. No. 69 at 15).

The Government responds that Cheng's argument, while creative, is meritless. While not denying that NASA was aware of the Spanish researchers, its response is straightforward. Primarily, the Government points out that Cheng has not been accused of violating the NASA China Funding Restriction (which was created in two budgeting statutes, not a criminal statute); instead, he is accused of conspiracy, wire fraud, and lying to the Government. Stated differently, the Government contends that it does not matter whether Cheng's involvement violated the NASA China Funding Restriction or not; he lied to the Government about his ties to China and it is his lies—not the funding restriction—that are the basic premises underlying the charges. NASA's China Funding Restriction (which arguably would have prevented TAMU from receiving the grant money) may be relevant—it may have even been the motive for the alleged crimes—but regardless of the reasons, one cannot lie to the Government to get grant money.

The Court finds the arguments of both sides to initially have some appeal.

### III.

The original China Funding Restriction stems from two different appropriation acts passed by Congress. These acts state in pertinent part:

> Sec. 539. (a) None of the funds made available by this Act may be used for the National Aeronautics and Space Administration (NASA) or the Office of Science and Technology Policy (OSTP) to develop, design, plan, promulgate, implement, or execute a bilateral policy, program, order, or contract of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company unless such activities are specifically authorized by a law enacted after the date of enactment of this Act.
>
> (b) The limitation in subsection (a) shall also apply to any funds used to effectuate the hosting of official Chinese visitors at facilities belonging to or utilized by NASA.
>
> (c) The limitations described in subsections (a) and (b) shall not apply to activities which NASA or OSTP have certified pose no risk of resulting in the transfer of technology, data, or other information with national security or economic security implications to China or a Chinese-owned company.

> (d) Any certification made under subsection (c) shall be submitted to the Committees on Appropriations of the House of Representatives and the Senate no later than 14 days prior to the activity in question and shall include a description of the purpose of the activity, its major participants, and its location and timing.

Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, § 539, 15 STAT. 639.

> Sec. 1340. (a) None of the funds made available by this division may be used for the National Aeronautics and Space Administration or the Office of Science and Technology Policy to develop, design, plan, promulgate, implement, or execute a bilateral policy, program, order, or contract of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company unless such activities are specifically authorized by a law enacted after the date of enactment of this division.
>
> (b) The limitation in subsection (a) shall also apply to any funds used to effectuate the hosting of official Chinese visitors at facilities belonging to or utilized by the National Aeronautics and Space Administration.

Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112-10, § 1340, 125 STAT. 123.

The provisions in question do not criminalize any conduct. They are merely restrictions as to how NASA may (or may not) spend Congressionally authorized funds.

NASA, whether correctly or not, has interpreted these funding restrictions and published its interpretations and resulting restrictions in various places. In fact, it allegedly provided these restrictions to TAMU in the very grant process under scrutiny here. An example that may be of some relevance is NASA's position regarding participation with it *and* an institution of the Chinese state. NASA explained that position in the answer to one of its Frequently Asked Questions ("FAQ"):

> Q3: What about my graduate student, post-doctoral fellow, or other investigator on my team who is not at a Chinese institution but is a Chinese citizen?
>
> A3: The statute does not restrict individual involvement based on citizenship or nationality. Rather, individuals are subject to the restriction if they are affiliated

4

with institutions of the People's Republic of China or Chinese-owned companies incorporated under the laws of China. Thus, a team member who is a Chinese citizen may work on a NASA project, *but an individual affiliated with an institution of the Chinese state will be subject to the statutory restriction.*

NASA Science, *PRC FAQ for ROSES*, https://science.nasa.gov/researchers/sara/faqs/prc-faq-roses (Jan. 4, 2022) (emphasis added).

Like the China Funding Restriction, NASA's policies or standards are not criminal statutes; clearly, they are not statutes at all. They are interpretations or explanations as to the manner in which NASA is going to implement the China Funding Restriction. They are published as part of a package provided to those seeking grants in order to ensure that its funds are not being spent contrary to the manner dictated by Congress.

For a number of reasons, this Court cannot hold as a matter of law that the Congressional restrictions do not apply to the NASA-TAMU grant and therefore that Cheng is relieved of his duty not to lie to NASA.

First, regardless of the reason that NASA has for inquiring about Cheng's contacts with a foreign power, in this context NASA is entitled to honest answers. Stated another way, even if the guidelines NASA developed in order to ensure compliance with China Funding Restriction are flawed, overbroad, or do not accurately reflect the statutes that purportedly spurred their development, this circumstance does not give grant applicants a license to fabricate.

Second, Cheng is not charged with a violation of NASA's China Funding Restriction. He is charged with conspiracy, wire fraud, and making false statements. The elements of each are most easily seen by a review of the applicable Pattern Jury Instructions:

A. Conspiracy

First: That the defendant and at least one other person made an agreement to commit the crime of _____ (describe), as charged in the indictment;

5

Second: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

Third: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

B. Wire Fraud

First: That the defendant knowingly devised or intended to devise any scheme to defraud, that is _____ (describe scheme from the indictment);

Second: That the scheme to defraud employed false material representations [false material pretenses] [false material promises];

Third: That the defendant transmitted [caused to be transmitted] by way of wire [radio] [television] communications, interstate [foreign] commerce, any writing [sign] [signal] [picture] [sound] for the purpose of executing such scheme; and

Fourth: That the defendant acted with a specific intent to defraud.

C. False Statements

First: That the defendant made a false statement [made or used any false writing or document] to _____ (name executive, legislative, or judicial branch of the United States government) regarding a matter within its jurisdiction;

Second: That the defendant made the statement intentionally, knowing that it was false [knowing the same contained a false, fictitious, or fraudulent statement or entry];

Third: That the statement was material [the false, fictitious, or fraudulent statement or entry was material]; and

Fourth: That the defendant made the false statement for the purpose of misleading the _____ (name executive, legislative, or judicial branch of the United States government).

Fifth Circuit Pattern Jury Instructions (Criminal Cases) §§ 2.15B, 2.45, 2.57 (2015).

None of these counts (or their individual elements) incorporate the China Funding Restriction, nor do they require that an agency's interpretation of a budgeting restriction be correct. None of these charges even require that such a budgeting restriction exist or be

6

applicable. The subject of NASA's China Funding Restriction may or may not be relevant to this case as they may explain the circumstances surrounding the alleged conduct or may even supply a motive, defense, or explanation for the alleged conduct. Nevertheless, they are not essential to the existence of the alleged crimes or to the grand jury's actions in handing down the indictment.

The indictment in question is not dependent on the interpretation of either of the appropriations acts passed by Congress nor any interpretation of those acts either in the Code of Federal Regulations or by NASA in its grant-related materials. When reviewing the sufficiency of an indictment to determine whether it states an offense, "the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citing *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

"The purpose of an indictment is 'to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.'" *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998)). An indictment is sufficient if it "contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *Id.* (quoting *United States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)). This indictment does just that. The fact that the indictment in this case contains a detailed factual background and a history of why NASA delves into who is going to be working under its grants does not increase or decrease the requirements that govern the sufficiency of an indictment. In his motion Cheng has not questioned the adequacy of the actual charges alleged or their factual support. His motion relies solely on the "bilateral versus multilateral" nature of the project and his claim that if the grant is categorized as the latter, it

undermines all of the charges. This Court finds as a matter of law that regardless of whether the NASA-TAMU grant was bilateral or multilateral, Cheng can be charged with and, if proven beyond a reasonable doubt, found guilty of conspiracy, wire fraud, and making false statements to the Government.

### IV.

Finally, to the extent Cheng's Motion to Dismiss is premised on his conclusion that the intended project was multilateral, the Court also denies the motion. Cheng's argument is summarized in his initial salvo on the indictment:

> The Indictment is fatally flawed. The NASA Grant, NNX13AQ60G ("Grant"), that is the basis of this prosecution is not subject to the so-called "NASA China Funding Restriction" because it was intended to, and did, involve collaboration researchers based in Madrid, Spain from the inception. Dkt. 1 ¶ 17. Later, Russian scientists were added to the scientific project the grant funded. However, the NASA China Funding Restriction only prohibits *bilateral* work with China or Chinese corporations, involving *no* other countries or foreign institutions. The express collaboration with Spanish researchers on the Grant proposal rendered the NASA China Funding Restriction *inapplicable*.
>
> Because NASA's China Funding Restriction does not apply, none of the 17 Counts against Professor Cheng states a[1] criminal offense. Each Count is predicated on the allegation that "fraudulent representations and omissions to TAMU about [Prof. Cheng's China] affiliations caused TAMU to falsely certify to NASA that TAMU was in compliance with NASA's China Funding Restriction regarding a NASA-funded projected that TAMU sought and obtained on Cheng's behalf."

Doc. No. 69 at 1–2 (emphasis in original).

Cheng concludes NASA's China Funding Restriction did not apply to this matter because the presence of the Spanish researchers renders the work multilateral, not bilateral, and thus any lies made in the grant process were immaterial.

At this stage the Court cannot hold as a matter of law that the NASA-TAMU grant is multilateral. It is allegedly a contract between NASA and TAMU—with Cheng designated as

8

TAMU's principal investigator. Thus, NASA has provided restricted grant funds to TAMU whose primary investigator is—if the Government is correct—affiliated with an institution of the Chinese state. Based upon the record before the Court, the fact that some work is being performed by Spanish researchers does not, as a matter of law, change the number of contracting entities or necessarily turn a bilateral contract into a multilateral contract.

Here, Cheng is asking this Court to quash or dismiss the indictment on the basis of his conclusion that the NASA-TAMU grant is multilateral instead of bilateral. This Court has the authority to address this issue if it can do so as a matter of law. Nevertheless, a court must deny a motion to dismiss if it relies on disputed facts. *See United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004); *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998). Here, there are many factual issues that might be involved in the determination of whether the NASA-TAMU grant is bilateral or multilateral. Those issues, in and of themselves, require the denial of the motion. More importantly, however, a court only grants a motion to dismiss if, as a matter of law, the "infirmity" is such that the indictment fails to allege facts that, if true, would constitute a prosecutorial offense. This indictment does not fall into that category.

The Motion to Dismiss (Doc. No. 69) is denied.

SIGNED at Houston, Texas this 12 day of January, 2022.

Andrew S. Hanen
United States District Judge